IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Otis P. Johnson, Jr., <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )    1:14cv148 (LMB/TCB) <br> ) |
| Jonathan Durrell Riddick, <br>     Defendant. | ) <br> ) |

MEMORANDUM OPINION

Otis P. Johnson, Jr., a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was the victim of excessive force during his former incarceration at Sussex II State Prison ("Sussex II").[1] The matter is now before the Court on a Motion for Summary Judgment filed by the sole named defendant, Jonathan Durrell Riddick. Dkt. 23. Defendant has submitted a supporting Memorandum of Law with exhibits, and has provided plaintiff with the notice required by Local Rule 7(k) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. 24-25. After receiving an extension of time within which to do so, plaintiff filed a Response to Motion for Summary Judgment on October 6, 2014. Dkt. 30. Accordingly, this matter is now ripe for disposition. For the reasons which follow, defendant's Motion for Summary Judgment will be granted, and summary judgment will be entered in his favor.

I. Background

Briefly, plaintiff alleged that on February 5, 2013, he was locked in a strip cell at Sussex II and was "on [his] knees, sick, trying to see a nurse to get some medical attention." Compl. at 5. Around lunchtime, he pressed the intercom button for emergency medical assistance because

---

[1]Plaintiff is now confined at Wallens Ridge State Prison.

he was throwing up and could not hold down food. Officer Riddick came to plaintiff's cell distributing lunch, and plaintiff passed the officer a cup to get some juice. Plaintiff told the officer that he was sick and wasn't going to be eating his lunch and said that he needed to see the nurse, and the officer asked if he would be drinking the juice. Plaintiff responded "no" and the officer took the juice out of plaintiff's hand and placed it on top of a trash can, and when he came back to plaintiff's cell he allegedly "snatch[ed] the T-shirt out of [plaintiff's] hand and threw it on the floor, then started stomping [plaintiff's] arm repeatedly as hard as he could." Id. Plaintiff pulled his arm into the cell and defendant kicked the tray slot shut. Plaintiff attempted to get some help but received no response until the next shift came on duty. As a result of this incident plaintiff's arm is permanently scarred and he suffers recurring sharp pain. Id. He alleged expressly that "[t]his was done maliciously and sadistically to cause harm to me. No force can be justified ...." Id. As relief, plaintiff seeks monetary damages and a transfer to a Level III facility. Compl. at 6.

By an Order dated February 26, 2014, plaintiff was directed to sign and return an affidavit concerning his exhaustion of the administrative grievance process. Dkt. 2. On the Verified Statement plaintiff returned to the court, he affirmed that he exhausted his administrative remedies as to his claim, Dkt. 6, and defendant has not contested that assertion. Accordingly, this matter may be adjudicated on the merits. See Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). For the reasons which follow, defendant's Motion for Summary Judgment will be granted, and judgment will be entered in his favor.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Defendant has established the following facts. At the time he executed his affidavit on

June 25, 2014, defendant had been employed as a corrections officer at Sussex II for approximately six (6) years. Riddick Aff. ¶ 1. On February 5, 2013, he was working as a floor officer on the day shift in Housing Unit #3, where plaintiff was confined in a strip cell. Id. ¶ 4. At approximately 11:55 a.m., defendant approached plaintiff's cell and opened the tray slot to serve plaintiff a lunch tray. Id. Plaintiff, to whom defendant had never spoken before, said that he did not want the tray and asked to see the nurse. Id. Defendant returned the tray to the feeding cart and explained to plaintiff that he had to finish his assigned task of feeding offenders their lunches, and that he would contact the nurse thereafter. Id. Defendant then attempted to give plaintiff a cup of juice through the tray slot, but plaintiff grabbed it, began to curse, and tried to knock the cup out of defendant's hand. Id. At that point defendant noticed that plaintiff also was holding a second cup containing an unidentified liquid, and plaintiff both spilled the juice on defendant and threw the unidentified liquid at him, striking defendant on his pants leg and his shoe. Id. Defendant tried to close the tray slot with his hand, but plaintiff wrapped a t-shirt around the slot to keep defendant from being able to do so. Id. Defendant used his hands to try to get the t-shirt off the slot and eventually got it away from plaintiff by pulling it through the slot. Id. Plaintiff continued to yell and curse and kept grabbing defendant's arms as he attempted to close and secure the tray slot, and after several such attempts defendant "placed distance between [himself] and the offender and used [his] foot to close the slot, and then secure[] it." Id. Defendant attests:

> I did not intentionally close Johnson's hands in the slot, nor did I intend to harm him. I did not observe Johnson's hands or arms in the tray slot when I closed it with my foot, nor did I stomp his hands or arms in the tray slot as he claims in this lawsuit. As Johnson kept grabbing my arms when I attempted to close the tray slot, my aim was to prevent being assaulted further by Johnson.

4

Riddick Aff. ¶ 5.

As a result of the incident, defendant wrote a disciplinary offense report against plaintiff for the infraction of attempting to commit simple assault upon a non-offender. Riddick Aff. ¶ 6. On February 12, 2013, plaintiff was convicted of the charge and penalized with 30 days in disciplinary segregation. Id.; Enc. A.

Defendant has also provided the affidavit of R. Connor, R.N., the Health Services Administrator at Sussex II. Connor Aff. ¶ 1. Nurse Connor attests that on February 5, 2013, plaintiff was seen by a nurse during sick call at 7:55 p.m., when he complained of being "assaulted by [an] officer during lunch." Id. ¶ 5. The nurse took plaintiff's vital signs and noted multiple bruised areas to his lower left arm and a slight amount of swelling in his upper left arm. Plaintiff stated that the arm was tender to the touch, and the nurse noted a facial grimace. Id. Plaintiff stated that his pain level was 5 or 6, and the nurse observed that he had limited range of motion due to the pain and "bilateral wrist restraints." Id. The nurse noted no open areas or protruding bones, and she referred plaintiff's chart to the physician for an x-ray of the arm to rule out a fracture. Id. She also gave the plaintiff Motrin. Id.

Two days later, plaintiff was seen by the doctor for complaints of pain in his left shoulder and arm. Connor Aff. ¶ 6. The doctor noted that plaintiff was a well built, muscular individual in no distress, alert, oriented and ambulatory. Id. Upon examination the doctor found no restriction of motion of plaintiff's left arm or hand, no bone deformity, and some skin ecchymosis to the forearm and arm.[2] Id. An x-ray was taken of the arm that reflected no acute fracture or dislocation of the shoulder, forearm or humerus., and the doctor assessed the injury as

---

[2]Ecchymosis is defined as a discoloration of the skin from bleeding underneath, typically caused by bruising.

minor contusions to the left shoulder and upper extremity. Id.

On February 18, 2013, plaintiff was seen by the nurse during sick call for his complaint of left arm injury. He stated that this pain level was seven, and the nurse noted bruising of the left forearm with no swelling and gave plaintiff Motrin. Connor Aff. ¶ 7. Nine days later, the nurse visited plaintiff on sick call and plaintiff reported that he no longer needed to be seen. Connor Aff. ¶ 8. Plaintiff was seen and assessed by medical personnel at Sussex II four more times between March 22 and May 30, 2013 for complaints of left arm pain. Staff noted on those occasions that he was not in distress, he had no restriction in his range of motion, and he had no bone fracture, and plaintiff continued to be prescribed Motrin and analgesic balm. Id. ¶¶ 9-12. On June 11, 2013, plaintiff was transferred to Wallens Ridge State Prison. Id. ¶ 13.

Plaintiff's Response to Motion for Summary Judgment is neither sworn nor notarized, and consists of a reiteration of the factual allegations in the complaint and a brief memorandum of law. Plaintiff's pleading thus is insufficient to oppose a motion for summary judgment, as it is unsworn and does not subject the author to the penalty of perjury for any misstatements. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion); Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury). Accordingly, plaintiff's unsworn statements cannot be considered here.[3]

---

[3]Moreover, even if plaintiff's response had been sworn, the nonmoving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This is true even where the nonmoving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings; "a declaration under oath ... is

In determining whether the Eighth Amendment has been violated by the use of excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident." Hudson, 503 U.S. at 9. The extent of injury suffered by the inmate is relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force could plausibly have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of force applied. Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (rejecting the notion that an excessive force claim involving only *de minimis* injury is subject to automatic dismissal). The Eighth Amendment generally excludes from constitutional recognition *de minimis* uses of physical force, Hudson, 503 U.S. at 9, and an inmate who complains of a "push or shove" that causes no discernable injury "almost certainly" fails to state a valid excessive force claim. Id., quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 130 S.Ct. at

---

not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994). Here, the factual allegations in plaintiff's response amount to nothing more than a conclusory recapitulation of the complaint, without additional supporting evidence. Thus, even had it been sworn, plaintiff's pleading would still be insufficient to defeat defendant's summary judgment motion. Doyle v. Sentry Ins., 877 F.Supp.1002, 1005 (E.D. Va. 1995) (Merhige, J.) (to defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations or denials contained in the pleadings.")

1178-79.

Defendant Riddick's attestation that he did not intend to harm plaintiff when he used his foot to close plaintiff's tray slot, and that his sole aim in doing so was to prevent being further assaulted by plaintiff, is uncontroverted. In addition, plaintiff's being disciplined for assaulting the defendant is not contested. Given this evidence, plaintiff has failed to carry his burden to show that defendant applied force "maliciously and sadistically to cause harm," Hudson, 503 U.S. at 7, and therefore fails to establish an Eighth Amendment violation.

### V. Conclusion

For the foregoing reasons, the defendant's Motion for Summary Judgment will be granted, and judgment will be entered in favor of the defendant by an appropriate Order to be issued with this opinion.

Entered this 8th day of January 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge